M. J. O'NEIL, INC. v. CHARLES CONNER AND ANOTHER.[1]

October 16, 1931.

Nos. 28,576, 28,577.

Baldwin Schroeder, for appellant.

Ware & Melrin, P. F. Sherman, and A. W. Swanson, for respondent Federal Surety Company.

[1]Reported in 238 N. W. 679.

WILSON, C. J.

The appeals are from orders denying motions for new trials.

There were two actions between the same parties. They were tried together, but separate findings were filed. Each action is to recover for plumbing and heating materials. Defendant Conner contracted with the board of education in Minneapolis to furnish and install plumbing and heating equipment in two school buildings for $34,975 each. Defendant Federal Surety Company executed the usual public contractor's bond in each case.

The one controversy is about two boilers put in the Minnehaha school building, and the other involves two boilers put in the Loring school building.

The two complaints are in form an action on account. One alleges materials furnished at Conner's request for one of these school buildings in the sum of $4,734.16, and the other alleges that materials were so furnished at Conner's request for the other building to the extent of $5,332.17. Plaintiff sought to recover as a balance in each case the sum of $859.48 and interest. The answer of defendant Conner admitted a balance due plaintiff of $351 in each case. Defendant surety company alleged lack of information and made a general denial. There was some controversy about the application of certain payments.

Plaintiff is a wholesale dealer in plumbing and heating supplies. Its account books showed that it bought the four boilers in question from the Pacific Steel Boiler Corporation and that it sold them to Conner.

Upon the trial of the case defendant surety company took the position that Conner bought the boilers himself from the Pacific Steel Boiler Corporation upon his own credit and later the plaintiff, pursuant to an agreement with and the authorization of Conner, advanced the money to pay the boiler company and charged Conner with the amount so advanced. The court so found. If such facts were sustained by the evidence the conclusion of law was correct. First Nat. Bank v. O'Neil, 176 Minn. 258, 223 N. W. 298; First Nat. Bank v. Hagquist, 177 Minn. 194, 225 N. W. 11. Since

we find that a new trial should be had, we do not discuss the merits of the case upon the present record.

Upon the trial one Girrbach, representing a sales agency in Minneapolis, who sold these boilers for the boiler company, testified that he sold them to Conner and that Conner gave him a written order for them. Mr. Conner testified to the same effect. No written order however was produced at the trial.

The cases were tried January 19 and 20, 1931, having been set for trial January 16, 1931. On January 10 plaintiff's counsel arranged to go over the matter involved with Mr. M. J. O'Neil, president of the plaintiff corporation. On January 11 Mr. O'Neil was taken suddenly and seriously ill and remained so up to and including the time of making the motion for a new trial herein, and during such illness he was in such physical and mental condition that it was impossible for counsel to discuss any matters with him.

On January 15 counsel for the respective parties had a conference at plaintiff's office, and its records were exhibited to counsel for defendant surety company. The only matter then discussed was the application of certain payments made by Conner. On the next day counsel had another conference, and the discussion also related to the application of such payments.

In anticipation of the trial, plaintiff's counsel examined its records and, finding that the account book showed the purchase of the identical boilers from the boiler company, payment therefor by plaintiff, and the charge against Conner for the same boilers, indicating that the plaintiff had sold the same to Conner, concluded that the account books would prove plaintiff's cases without the necessity of having Mr. O'Neil present; so the cases went to trial.

In preparing for trial without Mr. O'Neil, plaintiff's counsel examined plaintiff's files for correspondence with the boiler company, and a letter was found written June 28, 1928, referring plaintiff to the witness Girrbach for certain information. This letter was found on January 17, 1931, and on January 19 counsel called upon Girrbach and made inquiry as to the four boilers, specifying the place of their use, etc. and Girrbach stated that he had no recollection of plaintiff or Mr. O'Neil having any connection there-

with. He stated all papers relating to the matter had been sent to the boiler company then located at Waukegan, Illinois. Counsel for plaintiff made inquiries of plaintiff's office employes, but without results. He did not learn of the claim of defendants as hereinbefore stated until near the close of the trial. The decision was filed on February 2, 1931. Counsel opened up correspondence with the boiler company and learned thereby for the first time that Mr. O'Neil gave a written order to Mr. Girrbach on June 20, 1928, for the four boilers here involved. A copy of the order is attached to the motion for a new trial. It shows that the boilers were to be shipped to Everham & Girrbach and billed to M. J. O'Neil, who remitted for them December 5, 1928. The price was $5,000. Two were shipped June 29, 1928, and the other two July 3, 1928. They were delivered to the schoolhouses from the cars. Conner's contract with the school board is dated June 15, 1928. The contract with plaintiff is dated June 19, 1928. The order above mentioned is dated June 20, 1928. The boiler company invoiced the boilers to plaintiff on June 29, 1928, and July 3, 1928. On these dates plaintiff credited the boiler company in the sum of $5,000.

The records of the boiler company are important and tend to refute the testimony of the defense. It is made to appear that the boiler company charged these boilers on its own books to the plaintiff and that plaintiff paid for them. According to their records they had no direct dealings with Conner.

Counsel should not be condemned or punished for going to trial under the circumstances without the presence of Mr. O'Neil. He had reasonable grounds for believing Mr. O'Neil's presence unnecessary. He was caught unprepared for the unexpected and successful defense. He was taken by surprise. He was without fault.

A peculiar circumstance may have done much to lull him into contentment. Defendant's admission in the answer that he owed $351 in each case was a strong circumstance to take counsel off his guard. If the defense, as established in this case, was in fact based upon the truth, this admission of Conner would not be true, because instead of then owing $351 in each case he would have over-

paid plaintiff several hundred dollars in each case and indeed would have had a credit due him of approximately $1,701.77 on each job or a total of $3,403.55 instead of owing, as he admitted in his answer, $351 on each job.

He acted diligently in investigating the facts and soon discovered what appears to be a complete answer to the defense. New trials are not granted freely, but cautiously; and only to prevent grave injustice.

Ordinarily one who is taken by surprise on the trial must instantly call it to the attention of the court and seek immediate relief, such as asking for a continuance. But counsel, with an absent sick client, had no reason to suppose that there was any effective answer to the damaging testimony against him. The rule requiring counsel to ask for a continuance is not inflexible but yields to the demands of justice. 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7119. Counsel was not negligent. He could not personally talk to his client; he did not know of the written order given to Girrbach by client. In short he had nothing to offer the court as a reason for a continuance. He could not then point out how a continuance would help him. He had no reason to suggest to the court at the time that the witnesses Girrbach and Conner were mistaken about who gave the written order which they did not produce. As to this pivotal point defendant's proof is oral; here the written order seems to speak differently. It is probable that the account books of the boiler company would also conflict with their version.

We conclude that the record shows such an accident and surprise as to require the plaintiff to be given a new trial. It is so ordered.

Reversed.