## LARRY BERG v. ROBERT C. GUNDERSON AND ANOTHER.

147 N. W. (2d) 695.

December 30, 1966—No. 39,631.

*Jack Fena,* for appellant.

*Spellacy, Spellacy & Lano* and *John A. Spellacy,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action by Larry Berg for injuries and property damage resulting from a two-car accident. Defendants are Robert C. Gunderson, owner of the automobile, and Edward Gunderson, its driver. The accident occurred about 4 p. m. January 10, 1964, on Highway No. 37 near Cherry in St. Louis County.

The jury returned a verdict for plaintiff in the sum of $2,000. This appeal is from an order denying plaintiff's subsequent motion for a new trial. It is plaintiff's contention that the court erred (1) in receiving opinion evidence in response to certain hypothetical questions where defendants had agreed to supply a needed foundation for such questions but failed to do so; (2) in instructing the jury that it should not consider any diminution of plaintiff's future earning capacity; (3) in receiving a medical report from a clinic which differed materially from other reports of such clinic; (4) in permitting defendants' counsel to argue that plaintiff had not waived his statutory privilege with respect to certain medical testimony and to argue the inference which should follow this, when in fact plaintiff had waived his privilege; (5) in instructing the jury to regard plaintiff's claims as to future pain and suffering with some caution; and (6) in refusing to grant a new trial because of the inadequacy of damages.

The evidence established that at the time of the accident on January 10, 1964, plaintiff was regularly employed as a welder; that immediately following the accident, he noticed no pain and was able to exert himself physically without difficulty; that he continued to work at his regular employment until February 15, 1964; that he had first seen his physician, Dr. John J. Muller, the morning after the accident, but on February 18,

1964, had changed physicians and been attended by Dr. L. W. Johnsrud; that at that time he claimed that he had been injured in his lower back and left shoulder as a result of this accident, but that he did not disclose to Dr. Johnsrud that he had injured his neck in a previous accident which occurred in November 1963.

The evidence also disclosed that between February 15, 1964, and April 23, 1964, plaintiff missed approximately 51 days of work at $25 per day for a total wage loss of $1,275, which with other losses and expenses brought his special damages up to $2,012.85.

There was testimony that his doctor had told him to return to work on two occasions in March 1964 and that on April 23, 1964, he did return to work and thereafter continued to work up until the time of trial.

There was evidence that in both the November 1963 accident and in the January 1964 accident plaintiff had sustained automobile damage slightly in excess of $200; that both accidents had occurred when plaintiff came to a sudden stop after being struck by an oncoming car; that in the January 1964 accident the jolt had not been severe enough to dislodge plaintiff's hands from the steering wheel or to cause his glasses or cap to be jarred from place; and that there were no bruises resulting from that accident, except on his left shoulder.

In a written statement made shortly after the January 1964 accident, plaintiff stated that neither his back nor his neck had been injured before, although later he admitted that he had hurt his neck in the November 1963 accident. Medical records submitted in evidence indicated that as far back as June 1962 plaintiff had complained of a severe pain in his lower back which had kept him from working for more than a month, and he admitted that his back was in the same condition at the time of trial as it had been following treatment in 1962.

Dr. L. W. Johnsrud, called by plaintiff, testified that on February 18, 1964, when he had first examined plaintiff, he complained of pain in his neck, left shoulder, and lower back, had said nothing then as to any injuries received prior to the 1964 accident, and had stated that before this accident he had been doing his work without pain or difficulty. Dr. Johnsrud then testified that from his examination he had found plaintiff suffering from arthritis and a narrowing of a disc space, which in his

opinion predated the accident of January 10, 1964; and that he further found that plaintiff was probably suffering from Parkinson's disease, which in his opinion was not caused or affected by the accident. He expressed the opinion that a person with arthritis of the degree disclosed by X rays of plaintiff's back could have suffered pain, muscle spasm, and limitation of motion irrespective of either accident. He said also that there was pain in plaintiff's lumbar spine at the time of his examination and there was practically no motion in the lumbar area; that on March 16, 1964, he had recommended that plaintiff wear a sacroiliac belt; that on March 23, 1964, plaintiff's pain was too severe for him to return to work; and that on March 25, 1964, and on May 21, 1964, plaintiff was still having pain in the lumbar area. Based upon the assumption that plaintiff had had no previous low back trouble, he expressed the opinion that the low back trouble of which plaintiff now complained was the result of the January 1964 accident and that plaintiff would have a 10-percent permanent partial disability therefrom.

On cross-examination defendants' counsel asked this witness whether his opinion that there was a 10-percent permanent partial disability to plaintiff's back resulting from the January 1964 accident would be altered if it were true that plaintiff had suffered low back difficulties as a result of the November 1963 accident. This question was objected to as assuming facts not in evidence, and defendants' counsel then stated that "we do intend to produce certain evidence here." The court then stated:

"Well, counsel would, of course, for a question like that have to promise that he will show evidence—bring in evidence that would substantiate such ingredients of a hypothetical question. Do you have that in mind, counsel?

"Mr. Spellacy [counsel for defendants]: Yes, sir.

"The Court: All right. Proceed."

The witness then answered that such factor would influence his opinion as to plaintiff's disability resulting from the January 1964 accident.

To supply the required evidence for the hypothetical question, defendants subsequently introduced records of the Adams Clinic concerning the accident of November 9, 1963. These records disclosed nothing to

indicate that plaintiff then complained of low back pain or that this accident had resulted in injury to his lower back. Dr. Muller of this clinic was subpoenaed by defendants after plaintiff had waived all privilege with respect to his testimony. He testified that neither the charts nor the records of the clinic with respect to plaintiff's treatment indicated that plaintiff had had low back trouble as a result of the 1963 accident. Reading from the regular records of the clinic, including medical reports and correspondence covering treatment of plaintiff over the years, Dr. Muller brought out that plaintiff had complained of low back trouble in 1957, 1960, and 1962; that when he first examined plaintiff following the January 1964 accident, on January 11 he had found no visible signs of injury, but plaintiff complained of pain in his neck and lower back; that on January 12, 1964, plaintiff had not complained of low back pain; and that in the examination of that date he ascertained that plaintiff was suffering from Parkinson's disease. In his opinion the muscle spasms which plaintiff had were in part due to Parkinson's disease. He expressed the opinion that a preexisting arthritic condition in plaintiff's lower back was probably aggravated by the accident of January 10, 1964.

Dr. E. N. Peterson, called by defendants, testified that he had examined plaintiff on May 1, 1964; that on that occasion plaintiff told him that in the November 1963 accident he had injured his neck but denied that he had ever injured his back prior to the January 1964 accident; that Dr. Peterson then found that plaintiff was suffering from tremors, stiffness, and arthritis; that X rays taken by Dr. Johnsrud, the Peterson-Lemont Clinic, and the Adams Clinic showed the same arthritis; that in the witness' opinion the tremors were caused by Parkinson's disease and were not associated with the accident of January 1964, the stiffness in plaintiff's back was due to his arthritis and Parkinson's disease, and the injury of January 1964 produced nothing more than a mild strain or sprain without creating any disability.

Dr. V. J. Paciotti, called by plaintiff, testified that the spaces between discs L3 and L4 in plaintiff's back had narrowed over the years but that he had not mentioned this in connection with X rays which he had taken in 1962 because he had not felt that at that time this was significant; that the different X rays were almost identical with respect to hypertrophic

changes and the narrowing of disc spaces in plaintiff's back; and that in the witness' opinion none of these changes was caused by the accident of January 1964.

A report of Dr. Bernard Flynn of the Adams Clinic to State Farm Mutual Insurance Company with respect to the accident of November 9, 1963, was received as part of the Adams Clinic records. This report mentioned back pain but not low back pain and also indicated injury to the cervical or neck region and negative X rays of the cervical spine. The original handwritten notes of Dr. Flynn did not refer to any "back pain." Neither these handwritten notes of Dr. Flynn nor the report to the insurance company mentioned any injury to the lumbar spine or any complaint with respect to the lower back. These records were received in evidence over objection on the ground that there was a discrepancy between the original notes of Dr. Flynn and the report. Defendants' counsel at one point advised the court that he would call Dr. Flynn to clear up this discrepancy. However, Dr. Flynn was not called although the records and report went to the jury as evidence.

At the close of the trial plaintiff's counsel moved that Dr. Johnsrud's response to the hypothetical question above described be stricken and the jury instructed to disregard such testimony on the ground that defendants had failed to produce the necessary evidence to support the hypotheses on which the question was based, as they had promised the court they would. This motion was denied, but the court gave an instruction requested by plaintiff concerning the prior accident.

In certain additional instructions given over plaintiff's objections the court charged the jury:

"* * * I think I inadvertently told the jury that if you find that plaintiff here is entitled to recover he may recover for future wage loss or future earning capacity. The plaintiff does not claim that, so the jury should not consider and should completely disregard any item of future wage loss or earning capacity. The jury should disregard that."

Plaintiff contends that this instruction was erroneous because the testimony of Dr. Johnsrud to the effect that plaintiff had sustained a 10-percent permanent partial disability to his lower back as a result of the acci-

dent of January 10, 1964, was sufficient as a basis for an award for loss of future earning capacity.

In his closing argument, counsel for defendants argued that plaintiff's failure to call Dr. Atmore and Dr. Friedlieb, who had attended plaintiff, gave rise to an inference that their testimony would have been unfavorable to plaintiff. Plaintiff's counsel contends that this argument was improper because, prior to and during the trial, he had instructed defendants that he would waive all privilege to any of plaintiff's attending physicians. When the case was tried, Dr. Friedlieb was absent from the state. No attempt was made to locate or subpoena Dr. Atmore, who was then in Duluth. Defendants contend that plaintiff's waiver was not timely because prior to the trial their counsel was unaware that these physicians had attended plaintiff; that when he did become aware of it there was no time to subpoena either of them; and that, accordingly, he was entitled to direct the jury's attention to the inference adverse to plaintiff which it might draw from his failure to call these doctors as witnesses.

During final argument plaintiff's counsel used a blackboard to illustrate the compensation he deemed adequate for plaintiff's damages with respect to future pain and suffering computed on a per diem basis. Later the court gave the jury a cautionary instruction concerning its use, to which plaintiff excepted.

■ The hypothetical question submitted by defendants' counsel was permitted over objection upon the agreement that evidence would be submitted that would indicate that following the accident of November 9, 1963, plaintiff had claimed that he had sustained injuries to his lower back therein. Defendants did not subsequently submit evidence which would establish this. Neither the written notes of the doctor who attended plaintiff in this previous accident nor the report he submitted to State Farm Mutual Insurance Company with respect thereto revealed any evidence that plaintiff had complained of injury to his lower back as a result of that accident. Defendants did establish that plaintiff's back had been previously afflicted with arthritis, disc degeneration, and Parkinson's disease, which could cause pain and muscle spasms; but none of such disabilities was attributed to the accident of November 9, 1963.

In this state of the proceedings, at the close of the testimony plaintiff requested that the court instruct the jury:

"There is no evidence in this case that the plaintiff Larry Berg suffered any injury to his lower back or that he had low back difficulties or made any complaints for low back pain resulting from an accident which occurred on November 9, 1963; and the jury is hereby instructed that any references * * * that may have been brought out during the trial that the plaintiff did suffer low back pain or low back injury as a result of the accident of November 9, 1963, is to be disregarded by the jury * * *."

In compliance with this request the court gave this instruction verbatim. In this situation accordingly the rule expressed in 20 Am. Jur., Evidence, § 796, appears applicable. There it is stated:

"* * * The court in its discretion may permit the question to anticipate proof of some of the facts, relying on the assurance of counsel that such facts will be proved later. In such a case, if the supporting evidence is not afterward given, the court should instruct the jury to disregard the opinion."

Here it seems reasonably certain that when the jury reached the matter of permanent disability it clearly understood from the above instruction that it could accept Dr. Johnsrud's testimony that the January 1964 accident had resulted in a 10-percent permanent partial disability to plaintiff's lower back.

■ Plaintiff contends that the court erred in instructing the jury that plaintiff "does not claim" that he is entitled to recover for future wage loss or future earning capacity. It is plaintiff's contention that the testimony of Dr. Johnsrud to the effect that plaintiff suffered a 10-percent permanent partial disability to his lower back as a result of the January 10, 1964, accident was sufficient to sustain a finding and award as to loss of future earning capacity.

This court has held in a number of decisions that in establishing such a loss it is not essential that prior earnings of the plaintiff be shown before damages may be awarded on the claim. Wilson v. Sorge, 256 Minn. 125, 97 N. W. (2d) 477; Zaikaner v. Small, 256 Minn. 275, 98 N. W.

(2d) 247; Lieberman v. Korsh, 264 Minn. 234, 119 N. W. (2d) 180. However, it is likewise settled that where a permanent impairment or loss of earning capacity is claimed by a plaintiff he must establish by a fair preponderance of the evidence the extent to which such impairment will be reasonably certain to occur. Carpenter v. Nelson, 257 Minn. 424, 101 N. W. (2d) 918.

Here defendants point out that plaintiff had returned to work after the accident and while he did not work from February 15 until April 23, 1964, he had continued to work up until the time of trial; that his only complaint was that he had aches and pains while doing his work; and that Dr. Johnsrud's testimony would be the only evidence which would support his claim. With respect to the latter's testimony, defendants point out that at no time did Dr. Johnsrud suggest that plaintiff would not be able to work in the future notwithstanding this disability; that at the trial plaintiff admitted that his back was in as good condition as it had been for 2 years prior thereto; and finally that at the most plaintiff would have continued to work for only 3 more years in any event.

Defendants contend further that it is significant that Dr. Johnsrud testified that when he examined plaintiff following the January 1964 accident plaintiff then stated that he had had no previous back trouble, although the record is clear that he had been suffering from an arthritic condition and from a disc degeneration in his back for a number of years; and that, accordingly, the jury was entitled to discount Dr. Johnsrud's testimony as to the extent of the disability to plaintiff's lower back resulting from the January accident.

Opposed to the testimony of Dr. Johnsrud was the testimony of two doctors to the effect that in their opinions plaintiff had suffered no disability as a result of the accident of January 10, 1964. Under the evidence described, it seems clear that plaintiff failed to establish by a fair preponderance of such evidence that the permanent partial disability to his back, testified to by Dr. Johnsrud, would result in any loss or diminution of his future earning capacity, particularly where he would not have continued to work for more than 3 years in any event. Accordingly, we find that the court was justified in instructing the jury to disregard any claims as to such damages.

■ Plaintiff further contends that the court erred in permitting defendants' counsel to argue to the jury that plaintiff's failure to submit the testimony of his attending physicians, Drs. Atmore and Friedlieb, permitted the jury to infer that the testimony of such doctors would have been unfavorable to plaintiff. It is plaintiff's contention that his action during the trial in advising defendants' counsel that he would waive all privilege as to any attending physicians nullified the right of defendants' counsel to call the jury's attention to the inference. Pursuant to this position, plaintiff requested the court to instruct the jury:

"There is no presumption of any kind against the plaintiff Larry Berg arising from his failure to call all of the doctors who treated him or examined him."

This request was refused.

Plaintiff points out that at the beginning of the trial he advised defendants' counsel that defendants might call any of plaintiff's attending physicians; that on the third day of trial plaintiff asked that the record show that all privilege had been waived at the beginning of the trial; and that it was only then that defendants objected on the ground that this had not given them sufficient time to subpoena the other attending physicians.

Plaintiff argues further that at the time of the trial Dr. Friedlieb was in Canada on vacation and not available in any event; and since there is no indication that defendants attempted to subpoena Dr. Atmore, they were not justified in referring to the inference the jury could draw from the nonappearance of these doctors.

In Dubois v. Clark, 253 Minn. 556, 93 N. W. (2d) 533, it was said that counsel for a defendant could argue the inference unless it was shown that the plaintiff had waived the right to assert the privilege either in pretrial conference or after the trial had commenced in sufficient time to permit defendant to subpoena the attending physician. As there stated (253 Minn. 560, 93 N. W. [2d] 537):

"* * * [T]he party examined should take timely measures outside the jury's presence to advise the court and opposing counsel as to their names; the reason for not calling them; and that any privilege with re-

spect to their findings was to be waived. Thereafter no comment as to the adverse inferences to be drawn because of their absence should be permitted. Should the court and opposing party be not thus advised and such witnesses be not called, it would then be proper for opposing counsel to make such comment without the necessity of first placing such witnesses on the stand to ascertain whether the privilege as to their testimony was to be exercised. Such procedure might be taken either in pretrial conferences, or, if trial has commenced, in chambers outside the hearing of the jury, but in sufficient time to permit opposing litigants, if they desire, to subpoena and present such witnesses for examination before trial is concluded."

With this principle in mind it would seem that here defendants' counsel was justified in making the argument complained of. At no time prior to trial did plaintiff disclose that Dr. Atmore and Dr. Friedlieb had attended him. During the trial and even at the time plaintiff agreed that the medical privilege would be waived as to all of his attending physicians, nothing was said about them. When plaintiff sought to introduce his medical bills, no mention was made of their charges. Not until cross-examination of plaintiff on the second day of the trial was it disclosed that he had been attended by them. To hold that defendants were then required to ask for a continuance, locate the two doctors, subpoena them, and place them on the stand to ascertain if the privilege was to be invoked or otherwise be denied the right to argue the inference would seem unreasonable. Accordingly, it is our opinion that the court did not err in denying the motion for a new trial because of the argument described.

■ The court's cautionary instruction with respect to the figure of $12,000 written on a blackboard by plaintiff's counsel in his final argument as a possible award for future pain does not appear prejudicial to the extent of requiring a new trial. Presumably the figure of $12,000 was based upon plaintiff's life expectancy of 12 years at a computation of approximately $3 per day, or $1,000 per year. Counsel for defendants objected to the blackboard computations and requested the court to instruct the jury that pain and suffering could not be computed in the way described. Counsel for plaintiff then stated that he would except to any

instructions such as were suggested by counsel for defendants. The court then instructed the jury as follows:

"I think it is my duty to say that there is no criticism of the arguments of counsel here, but there is one thing that I think the jury should have in mind, and that is what I just finished saying, that there is no exact yardstick for determining pain; and if any suggestion was made on the blackboard as to what pain in the future is worth, that is something that possibly you should regard with some caution. After all, it is your business as jurors to determine from all the evidence what that pain is and to what extent the plaintiff should be compensated for it."

The substance of this instruction was merely to call attention to a fact well know to everyone—that any attempt to measure damages for future pain and suffering must be speculative to a certain extent, and, accordingly, that the jury should use its own judgment in determining from all the evidence, rather than from only a blackboard computation, what would be a reasonable award for such damages. We find no error in this.

■ Plaintiff's final contention is that the verdict was so inadequate as to justify a new trial on the grounds of prejudice. In support of this, he asserts that his inability to work for some 51 days after the accident resulted in a wage loss of $1,275, and that additional medical costs and like items brought his total special damages up to $2,012.85. He contends that, having established special damages in this amount, a verdict of $2,000 was obviously inadequate, since it made no provision for pain and suffering or future disability.

Plaintiff's argument, however, overlooks evidence which the jury could have accepted as true and which would justify its verdict. Thus, it may have concluded that plaintiff's hospitalization and loss of wages was due to his previous condition caused by arthritis, Parkinson's disease, and disc degeneration. Likewise, it may have believed that Dr. Johnsrud was correct when he advised plaintiff to return to work on March 25, 1964, approximately a month before he actually did return. It may have decided to deduct the wage loss for this month in figuring damages. This would result in an award of approximately $500 to cover plaintiff's general

damages. That such a conclusion would find support in the evidence is manifested by the fact that plaintiff's complaints were subjective in nature and could be explained by his previous disability. Under these circumstances, we do not feel that there was an abuse of discretion by the court in denying the motion for a new trial because of inadequate damages.

Affirmed.