## B. N. FIFER v. OLAV L. NELSON, ADMINISTRATOR OF THE ESTATE OF BJORN O. NELSON.

204 N. W. 2d 422.

February 9, 1973—No. 43393.

314

*Blethen, Ogle, Gage & Krause* and *Bailey W. Blethen,* for appellant.

*Leighton, Meany, Cotter & Enger* and *Terence L. Meany,* for respondent.

Heard before Knutson, C. J., and Rogosheske, MacLaughlin, and Schultz, JJ.

MACLAUGHLIN, JUSTICE.

This is an appeal by defendant from a judgment awarding damages to plaintiff. The action arose out of a farm accident in which plaintiff was injured. The jury returned a special verdict in which they found both defendant and plaintiff negligent and attributed 80 percent of the negligence to defendant and 20 percent to plaintiff. The jury determined plaintiff's total damages to be $35,000. The trial court, pursuant to the jury's determination that plaintiff was 20-percent negligent, ordered judgment for plaintiff in the amount of $28,000. Defendant made a motion for a new trial which was granted unless the plaintiff consented

to a reduction of the judgment from $28,000 to $22,000. Plaintiff consented to the reduction, and judgment was entered accordingly.

The accident in which plaintiff was injured occurred on September 26, 1968, on a farm near LeRoy, Minnesota, owned by one Bjorn O. Nelson. Plaintiff and Nelson had completed the filling of one of the silos with the aid of a silo blower. The two men were in the process of putting the blower back on wheels so it could be moved. This involved pushing a lever down to raise the blower off the ground and inserting a pin over the lever to keep the blower off the ground so that it could be supported by its wheels. At the time of the accident, Nelson was pushing the lever down, and plaintiff intended to insert the pin. As Nelson was pushing the lever down, plaintiff bent over apparently to watch its progress. Suddenly the lever flew up and struck plaintiff on the forehead. Plaintiff's son, who was present, testified that his father fell back on the ground and was dazed and bleeding. Subsequent to the accident, Bjorn Nelson died.[1] Plaintiff commenced this action in the summer of 1970 against the administrator of the estate of Bjorn Nelson, asking for damages in the amount of $11,000.

Defendant claims on this appeal that he is entitled to a new trial because he was substantially misled as to the nature of plaintiff's injuries; that the trial court erred in instructing the jury that it could consider plaintiff's loss of future earning capacity, if any, in arriving at damages, and also erred in admitting evidence of plaintiff's life expectancy; and that the amount of damages, even as finally entered, is excessive.

■ Defendant contends that he was seriously misled as to the nature of plaintiff's injuries by plaintiff's answers to interrogatories and by medical reports from plaintiff's doctors. Essentially, defendant claims surprise at the alleged seriousness of the injuries testified to at the time of trial and at the claim that plaintiff had suffered permanent injuries. Defendant neither

---

[1] The death of Bjorn Nelson was in no way related to the accident.

requested an adverse medical examination nor took an oral deposition of plaintiff. Defendant did, however, submit several written interrogatories. Plaintiff's answers to the interrogatories are dated August 2, 1970, nearly 2 years after the accident. The interrogatories and answers included the following:

Question: "7. On what date were you fully recovered?"

Answer: "7. I am not fully recovered."

Question: "8. If you claim you are not fully recovered, state the nature of the injuries, conditions and disability from which you are presently suffering."

Answer: "8. I have headaches, stiffness and cracking in my neck which affect my ability to concentrate and work properly."

Question: "15. Referring to Paragraph IV of the complaint of B. N. Fifer, identify the type of future medical expense which you anticipate you will incur in the future and approximate the amount of those expenses to the best of your ability."

Answer: "15. This calls for a medical opinion. I continue to have difficulty and expect to seek whatever medical care I can to relieve my problems."

Question: "20. Give the exact dates of your inability to work, and the respective dates on which you resumed:

(a) Part of your usual duties;

(b) All of your usual duties."

Answer: "20. I have been limited since the injury in performing my usual duties. [I]t is difficult for me to do the same because of discomfort and severe headaches, and blurred vision."

While the answers are not models of clarity, they do indicate that plaintiff, nearly 2 years after the accident, continued to have headaches and difficulties with his neck, and that he experienced some limitation in the performance of his duties since the accident. The medical reports also reveal that defendant should have been aware that plaintiff might claim some permanent injury.

At trial, defendant made no claim of surprise and made no motion for a continuance. We said in Schiro v. Raymond, 237 Minn. 271, 276, 54 N. W. 2d 329, 333 (1952):

"* * * Plaintiff may not remain silent throughout the trial, in anticipation of a favorable verdict, and raise the issue of surprise for the first time in the motion for a new trial."

Of course, as we indicated in M. J. O'Neil, Inc. v. Conner, 184 Minn. 281, 238 N. W. 679 (1931), the rule requiring counsel to request a continuance is not inflexible and must yield to the demands of justice. However, under the facts of this case, we conclude that defendant is not entitled to a new trial on this issue.

■ Defendant claims that plaintiff failed to offer sufficient proof to justify the trial court's instruction to the jury that they could consider loss of plaintiff's future earning capacity, if any, in assessing damages. We have held that it is not essential that prior earnings of the plaintiff be shown before damages based on impaired earning capacity may be awarded. Berg v. Gunderson, 275 Minn. 420, 147 N. W. 2d 695 (1966); Wilson v. Sorge, 256 Minn. 125, 97 N. W. 2d 477 (1959). However, where a permanent loss of earning capacity is claimed, plaintiff must establish by a fair preponderance of the evidence the extent to which such impairment is reasonably certain to occur. Berg v. Gunderson, *supra;* Carpenter v. Nelson, 257 Minn. 424, 101 N. W. 2d 918 (1960).

The evidence showed that plaintiff was a farmer. Both plaintiff and his son testified that before the accident they shared the farm work but that after the accident plaintiff was unable to perform his duties in the same manner as before the accident. Plaintiff's neighbor, also a farmer, and plaintiff's wife both testified that his ability to do physical labor was impaired after the accident. There was medical evidence to support a jury determination that plaintiff would have some minimal permanent disability.

In Wilson v. Sorge, 256 Minn. 125, 132, 97 N. W. 2d 477, 483 (1959), we said:

"* * * [I]mpairment of earning capacity is an item of general damages. It permits recovery for a loss or diminution of the power to earn in the future and is based upon such factors as the plaintiff's age, life expectancy, health, habits, occupation, talents, skill, experience, training, and industry. It is within the province of the jury to weigh all these elements and, guided by experience and common sense, to arrive at the proper monetary value of plaintiff's loss without recourse to his past earnings."

We hold that the trial court did not err in submitting the question of plaintiff's future earning capacity to the jury.

Evidence of plaintiff's life expectancy is admissible to assist in ascertaining damages for impaired earning capacity caused by permanent injuries. Hallada v. G. N. Ry. 244 Minn. 81, 69 N. W. 2d 673 (1955). We have reviewed the evidence of the alleged permanence of plaintiff's injuries and conclude that the trial court properly admitted evidence of plaintiff's life expectancy.

■ Finally, defendant claims the amount awarded as damages is "not simply excessive; it is outrageous." Nothing in the record indicates that the verdict was a result of passion and prejudice. Even though passion and prejudice are absent, appropriate action may be taken where the evidence does not justify the award of damages. Knox v. City of Granite Falls, 245 Minn. 11, 72 N. W. 2d 67 (1955). We have stated that we are reluctant to disturb a verdict as excessive in a case where the amount has the approval of the trial court, but that it does not follow from such reluctance that we should permit all verdicts to stand. Propper v. Chicago, I. I. & P. R. Co. 237 Minn. 386, 54 N. W. 2d 840 (1952). The facts of each case must serve to measure damages. Cameron v. Evans, 241 Minn. 200, 62 N. W. 2d 793 (1954).

Plaintiff missed 1½ days of work after the accident and sustained $144 in special damages. He has suffered from headaches described by his medical witness as a postconcussion syndrome. He testified to continuing intermittent pain in the middle part of his neck. X rays revealed a slight loss of the expected curva-

ture of the cervical spine and slight limitation of motion. As indicated, there was some testimony to support damages for loss of future earning capacity.

Plaintiff's complaint alleged damages in the amount of $11,000. Plaintiff's counsel argued to the jury, at the conclusion of the 1-day trial, that damages should be assessed in the amount of $20,000. The jury returned a verdict of $35,000, which was reduced by the trial court to $27,500.[2] Plaintiff did not move to amend the prayer for relief in his complaint either before or after the jury returned the verdict.

Based upon the evidence, we have concluded that the verdict should be further reduced by this court. Accordingly, it is ordered that a new trial is granted unless plaintiff, within 10 days, files his consent in writing to a remittitur reducing the verdict to $22,500,[3] in which event a new trial is denied.

ROGOSHESKE, JUSTICE (concurring specially).

On the issue of damages this is a case where the trial court directly addressed and determined the question of a claimed excessive award and did not, in my opinion, order a sufficient remittitur.

---

[2] The entry of judgment in the amount of $22,000 after remittitur reflects a 20-percent reduction for plaintiff's comparative negligence. Therefore, the trial court's reduction of total damages was from $35,000 to $27,500.

[3] Judgment for the plaintiff would be in the amount of $18,000 after reflecting the 20-percent negligence of plaintiff. Interest from the date of the verdict, together with costs and disbursements, should also be allowed.