Helen C. **SYLVESTER**, et al.,
**Appellants,**

v.

Timothy H. **GLEASON**, et al.,
**Respondents,**

**City of Anoka, Respondent.**

**No. C2–84–2194.**

Court of Appeals of Minnesota.

July 23, 1985.

J. Michael Egan, Minneapolis, for appellants.

Thomas E. Peterson, Scott T. Anderson, Minneapolis, for respondents.

Louis R. Tilton, Minneapolis, for City of Anoka.

Heard, considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

Appellants Helen Sylvester and her husband Robert Sylvester brought this action following a multi-vehicle collision in which Helen Sylvester was injured. Trial was held on the issue of damages only. Appellants moved for a new trial on the issue of refusal to give JIG II, 160, future loss of earning capacity, and on denial of testimony based on thermogram tests.

Reversed and remanded.

## FACTS

Helen and Robert Sylvester commenced this action against defendants-respondents Gleason, Thrall and the City of Anoka as a result of a multi-vehicle collision which occurred July 13, 1981. While plaintiff Helen Sylvester's car was stopped at an intersection, a truck owned and operated by defendants Gleason and Thrall collided with a fire truck owned by defendant City of Anoka. The force of the impact caused Gleason's truck to strike Sylvester's car. Sylvester was treated for a head laceration and bruises at Mercy Hospital and released. Subsequently, she complained of lower back pain and was treated by both the family doctor and a neurologist, Dr. Steven Noran.

Defendants admitted that they were 100% causally negligent. The only issue at trial was damages. There is testimony to the effect that Sylvester continued to suffer back pain, requiring her to change her job from a teacher's aide for special education students to a study hall monitor. In addition to x-rays, CAT scans, a myelogram and electromyographic exams, her neurologist Dr. Noran used a thermogram as a diagnostic test. A thermogram is a process which produces a "heat photograph" purporting to reveal body temperatures which indicate nerve injuries. None of the tests but the thermogram showed any abnormality in the lower back. Two of the three thermograms taken revealed an abnormality.

The trial court refused to include in the jury instructions JIG II, 160 on future loss of earning capacity. The trial court also ruled that testimony on the thermogram was inadmissible on four grounds:

(1) The thermogram was a technique which had not gained acceptance in the

medical community and, therefore, failed to meet the *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923) test for admissibility;

(2) Without a showing of the controls and standards used when the thermogram was taken, there was insufficient foundation for admission;

(3) The plaintiff failed to comply with discovery demands under Rule 26.05(1)(B) and Rule 26.05(2)(B), Minn.R.Civ.P., by not informing the defendants that a thermogram was performed until two weeks before trial at the video-taped deposition of Dr. Noran, the neurologist who interpreted the test;

(4) In light of plaintiff's failure to comply with certain discovery requests, the questionable reliability of the thermogram and the foundation problems, any harm to the plaintiff in excluding the test was mitigated by the other diagnostic tests performed and by the fact that Dr. Noran's opinion would still be before the jury.

The jury returned a special verdict awarding $7,500 to Helen Sylvester and $1,000 to Robert Sylvester. Plaintiffs moved for additur, and in the alternative, for a new trial. The motion was denied November 16, 1984. Plaintiffs filed a notice of appeal December 18, 1984.

## ISSUES

1. Did the trial court err in denying Sylvester's motion for a new trial on grounds of refusal to give the requested jury instruction on future loss of earning capacity?

2. Did the trial court err in excluding from evidence testimony based on a thermogram test?

## DISCUSSION

1. Sylvester requested in writing JIG II, 160 on future loss of earning capacity and raised the issue in her memo supporting her motion for a new trial. The court denied the request on the theory that there was no evidence connecting the restriction of Helen Sylvester's activities at work to future earning capacity. Appellant contends that the trial court's refusal to instruct on future loss of earning capacity was reversible error. We agree.

Before an instruction on future loss of earning capacity is required, the plaintiff must first establish by a fair preponderance of the evidence the extent to which such impairment of earning is reasonably likely to occur. *Parr v. Cloutier*, 297 N.W.2d 138, 140 (Minn.1980).

A review of Minnesota cases which address the propriety of instructing a jury on future loss of earning capacity reveals a thread of commonality. The policy for this jury instruction encourages compensation for loss of the *power* to earn in the future. *See generally, Wilson v. Sorge*, 256 Minn. 125, 129–33, 97 N.W.2d 477, 481–83 (1959); *LeMay v. Minneapolis Street Railway Co.*, 245 Minn. 192, 200, 71 N.W.2d 826, 831 (1955) (emphasis added). Such recovery is based on factors including the plaintiff's age, life expectancy, health, occupation, talents, skill and training. *Young v. Hansen*, 296 Minn. 430, 434, 209 N.W.2d 392, 395 (1973).

Impairment of earning capacity is an item of general damages which does not require specific proof of actual earnings either before or after the injury. *Wilson v. Sorge*, 256 Minn. 125, 97 N.W.2d 477.

The Minnesota Supreme Court held that recovery for future loss of earning capacity was appropriate for a plaintiff who was presently performing homemaker activities and had no plans to resume gainful employment. In that case, the court said:

> * * * the impairment of the ability of a woman to work is an injury to her personal rights wholly apart from any pecuniary benefit the exercise of such power may bring, and if her injury has lessened this power she ought to be able to recover damages * * *.

*LeMay v. Minneapolis Street Railway Co.*, 245 Minn. 192, 200, 71 N.W.2d 826, 831 (1955) (citations omitted).

In those cases where it was not error to exclude the instruction, the trial court con-

cluded that the plaintiff had failed to meet the preliminary burden of proof, i.e., there was a dearth of evidence in the record relating to any effect on future earning capacity. *Krueger v. Nordstrom,* 367 N.W.2d 671 (Minn.Ct.App.1985); *Parr v. Cloutier,* 297 N.W.2d 138 (Minn.1980).

■ In the case before us, there is ample evidence in the record to require giving the jury instruction on loss of future earning capacity. Both Sylvester's doctor and the adverse medical witness testified that she will remain partially disabled for the rest of her life. Before the injury, appellant, a woman of almost fifty, was a teacher's aide, working with special education students. She was frequently responsible for children with physical restrictions. Sylvester had to lift these children and push their wheelchairs. Prior to the accident, she had no difficulty with her responsibilities.

However, Sylvester testified to the problems she had performing the physical tasks required of her job after the injury. Two of her co-workers confirmed this testimony. Sylvester had to seek a different job at the school as a study hall monitor, though sitting for long periods also caused her discomfort.

Dr. Noran testified to the restrictions he placed on her work activities: no lifting, pushing, pulling or twisting, no sitting, standing or walking for prolonged periods.

In comparable sets of facts, the supreme court found that where there is medical testimony of some permanent impairment and also where there is testimony confirming the plaintiff's contention that she is unable to perform her duties in the same manner as before the accident, it is proper for the jury to consider loss of future earning capacity.

For example, in *Fifer v. Nelson,* 295 Minn. 313, 204 N.W.2d 422 (1973), the plaintiff-farmer was unable to perform work duties shared with his son in the same way as he had before his injury. Medical evi-

dence supported the jury determination that he would have minimal permanent disability. There, the court submitted the question of loss of future earning capacity to the jury. On appeal, the trial court was affirmed on this issue. *Id.* at 318, 204 N.W.2d at 425.

Similarly, in *Young v. Hansen,* 296 Minn. 430, 209 N.W.2d 392 (1973), medical testimony concluded that the plaintiff suffered minimal permanent disability. The plaintiff testified that following his injury he continued to experience pain and loss of strength in his right leg after prolonged periods of work. Again, the supreme court upheld the trial court's decision to instruct the jury on future loss of earning capacity. *Id.* at 434, 209 N.W.2d at 395.

Here, Sylvester requested JIG II, 160 on future loss of earning capacity. The facts in her case support allowing the jury to consider this element of general damages. Failure to include the instruction was reversible error.

■ 2. Sylvester also seeks a new trial on the grounds that the court should not have excluded testimony based on thermogram tests. Exclusion of expert medical testimony lies within the sound discretion of the trial court, and its ruling will not be reversed unless it is based on an erroneous view of the law, or it constitutes an abuse of discretion. *Reinhardt v. Colton,* 337 N.W.2d 88, 93 (Minn.1983).

Since we are remanding this case for retrial, we need not rule on the admissibility of evidence based on thermograms. It would be inappropriate for us at this stage of the case to issue an advisory opinion regarding admissibility. However, we note that thermogram evidence is a developing area of the law. Before the new trial there will be ample opportunity for further discovery.

Because the thermogram is a controversial diagnostic test,[1] we believe the trial

---

1. Three jurisdictions accept the thermogram test into evidence: *Fay v. Mincey,* 454 So.2d 587 (Fla.App.1984); *Procida v. McLaughlin,* 195 N.J. Super. 396, 479 A.2d 447 (1984); *Foreman v.*

*State Farm Mutual Automobile Insurance,* 416 So.2d 258 (La.Ct.App.1982). An excellent discussion of the admissibility of thermogram evidence appears in an unpublished Florida opin-

court is in a better position to determine initially the reliability of this diagnostic tool. The trial court's previous ruling on admissibility is not necessarily determinative of what the ruling should be on re-trial. If deemed helpful, the trial court can seek amicus briefs. A fuller record would provide a better basis for determining whether thermogram evidence is admissible in Minnesota.

## DECISION

We reverse the trial court's refusal to instruct the jury on future loss of earning capacity and remand for a new trial. We decline to rule on the admissibility of evidence based on thermograms, leaving the initial resolution of that issue to the trial court after further discovery concerning the reliability of such tests.

Reversed and remanded for trial on damages.

ion. *Palma v. State Farm Fire & Casualty Co.,* 15th Judicial Circuit of Florida, Case No. 83–    4113 CA(L) 01 E.