RALPH L. RUSSELL *vs.* MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY.

June 25, 1884.

Master and Servant—Risks Incident to Use of Unsafe Machinery.—
A servant does not necessarily assume the risks incident to the use of unsafe machinery furnished him by his master because he knows its character and condition.

Same—Knowledge of Risk.—It is also necessary that he understood, or, by the exercise of common observation, ought to have understood, the *risks* to which he is exposed by its use.

Plaintiff brought this action in the district court for Hennepin county, to recover for personal injuries received by him, as brakeman in the employment of defendant, in coupling a car and locomotive tender. At the trial before *Lochren, J.,* and a jury the plaintiff had a verdict for $10,500. Defendant appeals from an order refusing a new trial. The case is stated in the opinion.

*J. D. Springer,* for appellant.

The plaintiff, in entering into the employment of the defendant,

impliedly contracted (1) that he possessed the ordinary skill and experience of those engaged in the occupation he undertook; (2) that he would exercise ordinary care to protect himself while engaged in that occupation; and (3) that he would assume the risk of all dangers incident to that occupation. Although the defendant may have failed in its duty to furnish proper machinery, yet if the plaintiff knew or had the means of knowing the unsafety of the machinery, but continued to use it without objection or complaint, he assumed the risk of all dangers incident to its use; and the risks incident to the use of the machine became an incident to the occupation in which he was engaged. Wood on Master and Servant, 681–3, 693, 698, 720–2, 746–758, 791, 793; Addison on Torts, 224–5; Wharton on Negligence, § 214; Cooley on Torts, 551–2; Pierce on Railroads, 379–382; Thompson on Negligence, 1008, 1009, 1015, 1016; *Perigo* v. *C., R. I. & P. R. Co.*, 52 Iowa, 276. The servant is bound to exercise his own judgment and to see patent defects. He is bound to observe the customary way in which the master carries on the business, and the master is under no greater obligation to care for the servant than the servant is to care for himself.

By the constant use of the engine and the many couplings he must have made to the tender during the two weeks he served as head brakeman, the plaintiff must have acquired knowledge that the tender was not equipped with a goose-neck, nor the draw-bar set out on a block, nor any other means adopted to prevent the tender and the car and coach from coming too closely together. *Lumley* v. *Caswell,* 47 Iowa, 159; *Perigo* v. *C., R. I. & P. R. Co.*, 52 Iowa, 276.

The plaintiff, in view of his contract that he possessed the requisite skill and experience of a head brakeman on a mixed train, was chargeable with knowledge of the instrumentalities universally or customarily employed to keep the tender and cars from coming too closely together. There was nothing in the draw-bars on the tender and car, or in their appearance, which would justify a man of ordinary common sense, much less one possessed of the skill and experience requisite to that occupation, in thinking that they were intended or would have the effect of keeping the car and tender from coming together. They were intended to hold them together, and not to keep them apart.

The lateral motion of the Miller draw-bar (of which respondent had knowledge) and the roundness of both draw-bars, were the most obvious and emphatic warning that could have been given that they were not employed to keep the cars apart; so that a knowledge of the simplest laws of mechanics was all that was required to discover this fact.    This the plaintiff was bound to apply.   *Walsh* v. *St. Paul & Duluth R. Co.*, 27 Minn. 367; *Michigan Cent. R. Co.* v. *Smithson*, 45 Mich. 212; s. c., 1 Am. & Eng. R. Cas. 101; *Hathaway* v. *Mich. Cent. R. Co.*, 51 Mich. 253; s. c., 12 Am. & Eng. R. Cas. 249; *Toledo, etc., Ry. Co.* v. *Black*, 88 Ill. 112; *Indianapolis, etc., R. Co.* v. *Flanigan*, 77 Ill. 365; *Chicago, etc., R. Co.* v. *Clark*, 18 Cent. L. J. 170.

The same rule has been applied to train operatives in the following additional cases:

*Kelley* v. *Silver Spring Co.*, 12 R. I. 112; s. c., 34 Am. Rep. 615; *McGlynn* v. *Brodie*, 31 Cal. 376; *St. Louis & S. E. Ry. Co.* v. *Britz*, 72 Ill. 256; *Chicago & N. W. Ry. Co.* v. *Donahue*, 75 Ill. 106; *Toledo, etc., Ry. Co.* v. *Asbury*, 84 Ill. 429; *Kroy* v. *C., R. I. & P. R. Co.*, 32 Iowa, 357; *Muldowney* v. *Ill. Cent. R. Co.*, 39 Iowa, 615; *Way* v. *Ill. Cent. R. Co.*, 40 Iowa, 341; *Baldwin* v. *C., R. I. & P. R. Co.*, 50 Iowa, 680; *Wells* v. *B., C. R. & N. R. Co.*, 56 Iowa, 520; s. c., 2 Am. & Eng. R. Cas. 243; *Atchison, etc., R. Co.* v. *Plunkett*, 25 Kansas, 188; s. c., 2 Am. & Eng. R. Cas. 127; *Sullivan* v. *Louisville Bridge Co.*, 9 Bush. 81; *Baltimore & O. Ry. Co.* v. *Stricker*, 51 Md. 47; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396; *Ladd* v. *New Bedford R. Co.*, 119 Mass. 412; *Lovejoy* v. *Boston & L. R. Co.*, 125 Mass. 79; *Fort Wayne, etc., R. Co.* v. *Gildersleeve*, 33 Mich. 134; *Michigan Cent. R. Co.* v. *Smithson*, 45 Mich. 212; s. c., 1 Am. & Eng. R. Cas. 101; *Day* v. *Toledo, etc., Ry. Co.*, 42 Mich. 523; s. c., 2 Am. & Eng. R. Cas. 126; *McGinnis* v. *C. S. Bridge Co.*, 49 Mich. 466; s. c., 8 Am. & Eng. R. Cas. 135; *Hathaway* v. *Michigan Cent. R. Co.*, 51 Mich. 253; s. c., 12 Am. & Eng. R. Cas. 249; *Hughes* v. *Winona & St. P. R. Co.*, 27 Minn. 137; *Clark* v. *St. P. & S. C. R. Co.*, 28 Minn. 128; *Morse* v. *Minn. & St. L. Ry. Co.*, 30 Minn. 465; *Walsh* v. *St. Paul & Duluth R. Co.*, 27 Minn. 367; *Devitt* v. *Pacific R. Co.*, 50 Mo. 302; *Hulett* v. *St. Louis, etc., Ry. Co.*, 67 Mo. 239; *Smith* v. *St. Louis, etc., Ry. Co.*, 69 Mo. 32;

*Cagney* v. *Hannibal & St. J. R. Co.*, 69 Mo. 416; *Baylor* v. *Del., L. & W. R. Co.*, 40 N. J. Law, 23; *Loonam* v. *Brockway*, 28 How. Pr. 472; *Owen* v. *N. Y. C. R. Co.*, 1 Lansing, 108; *De Graff* v. *N. Y. C. & H. R. R. Co.*, 3 T. & C. 255; *Haskin* v. *N. Y. C. & H. R. R. Co.*, 65 Barb. 129; *Gibson* v. *Erie Ry. Co.*, 63 N. Y. 449; *De Forest* v. *Jewett*, 88 N. Y. 264; *Crutchfield* v. *Richmond & D. R. Co.*, 78 N. C. 300; *Stone* v. *Oregon City Mfg. Co.*, 4 Oregon, 52; *Pittsburgh & C. R. Co.* v. *Sentmeyer*, 92 Pa. St. 276; s. c., 5 Am. & Eng. R. Cas. 508; *Northern Cent. Ry. Co.* v. *Husson*, 101 Pa. St. 1; s. c., 12 Am. & Eng. R. Cas. 241; *Kelley* v. *Chic., M. & St. P. Ry. Co.*, 53 Wis. 74; *Howland* v. *Milwaukee, etc., Ry. Co.*, 54 Wis. 226; *Naylor* v. *Chic. & N. W. Ry. Co.*, 53 Wis. 661; *Dillon* v. *Union Pac. R. Co.*, 3 Dillon, 319.

*C. K. Davis* and *A. B. Jackson*, for respondent.

MITCHELL, J. The injury complained of was sustained by plaintiff while in the discharge of his duties as brakeman on a "mixed" train on defendant's road, while coupling a "combination" or baggage car to the tender of a freight engine. The baggage car was equipped with a "Miller" coupler, while the engine had only an ordinary coupling, such as is used on freight cars. The Miller coupler, which has a certain amount of lateral motion, slipped past the draw-head on the tender, and thus permitted the two cars to come so close together as to crush the plaintiff, who was standing between them in the act of making the coupling. The evidence shows that when those two kinds of coupling are thus used together, owing to this lateral motion of the Miller coupler, the ends of the two are liable, under certain circumstances, to slip past each other, and thus leave insufficient room between cars for a brakeman to stand, unless the tender is supplied with a "goose-neck," wooden buffers, or some other such arrangement to keep the cars apart. In this case the tender was not supplied with anything of the kind, and hence the injury complained of. That defendant was guilty of negligence in supplying its servants with such unsafe instrumentalities is very clear, and indeed is not seriously controverted. But defendant's contention is that plaintiff knew, or had the means of knowing, the unsafe character of these couplings, and, having continued their use without objection, he assumed all the risks incident thereto. We shall not here enter into any general discussion

of the question when and under what circumstances a servant takes upon himself risks incident to the use of unsafe machinery, by continuing to use it without objection after knowledge of its defective character. We simply say that it is not enough that the servant knew or ought to have known the actual character and condition of the defective instrumentalities furnished for his use. He must also have understood, or by the exercise of ordinary observation ought to have understood, the *risks* to which he is exposed by their use.

To this rule this court has always strictly adhered. *Clark* v. *St. P. & S. C. R. Co.*, 28 Minn. 128. In some cases, as in the *double deadwood cases* cited by defendant, (*Michigan Cent. R. Co.* v. *Smithson*, 45 Mich. 212; s. c., 1 Am. & Eng. R. Cas. 101; *Hathaway* v. *Mich. Cent. R. Co.* 51 Mich. 253; s. c., 12 Am. & Eng. R. Cas. 249; *Toledo, etc., Ry. Co.* v. *Black*, 88 Ill. 112; *Indianapolis, etc., R. Co.* v. *Flanigan*, 77 Ill. 365;) the *risk* is obvious on inspection of the thing itself. In other cases the servant may know the character and condition of the instrumentality which he is called upon to use, and yet not have the means of knowing the nature or extent of the risks to which its use will expose him. The master and servant do not necessarily stand upon an equal footing in this regard. The servant, although a man of ordinary prudence as well as experience, may be quite incapable of appreciating the degree of risk involved in the use of a certain kind of machinery, while the master may be, and generally is. It is the master's duty to inform himself in that regard, for on him is involved the duty of exercising ordinary care to supply safe instrumentalities to his servant; whereas the latter has a right to assume, in the absence of notice to the contrary, or of something to put him on inquiry, that the master has performed his duty, and hence, to a certain extent, to rely on the superior judgment of his master. Hence, it is sometimes said that although a servant may have known of the defects, this will not defeat his recovery unless he knew that the defects rendered the thing dangerous. So, again, it has been held that a servant only assumes a risk which is announced to him, or which is a natural and ordinary incident to the employment, or *which, from the facts before him, it was his duty to infer.*

Now, in this case, plaintiff undoubtedly knew the character of these

two couplers. He knew that one was a Miller and the other a common one. He also knew that the former had a certain amount of lateral motion; also that there was no goose-neck or wooden buffers on the tender. But conceding this, and assuming that he must be held to the ordinary skill and experience of brakemen, it does not appear, certainly not conclusively, that he, by the exercise of ordinary observation, ought to have understood the risks to which he was exposed by using such couplers. He was not bound to be an experienced machinist or car-builder. It does not appear that he knew, or by the exercise of ordinary observation ought to have known, that the lateral motion of the Miller coupler was sufficient to permit it to slip past the end of the draw-head on the tender. It does not appear that the use of these two kinds of couplers together in this way was usual or common, so that brakemen generally would or should understand fully the dangers incident to such a practice. Indeed, from the evidence, it is to be presumed that prudent railroad companies do not ordinarily adopt any such practice. Plaintiff had been using them on this train for some time, and it does not appear that he had ever seen the two couplers slip past each other before,—a fact which distinguishes this case from *Toledo, etc., Ry. Co.* v. *Asbury,* 84 Ill. 429, cited by defendant. Neither does it appear that such a thing would be likely to occur except under peculiar circumstances; as, for example, where, as in this case, the coupling was being made on a curve. As remarked by the court below, the convexity of the draw-head on the tender being so slight, and the lateral motion of the Miller coupler being resisted by a spring, we cannot say that it was obvious or apparent that they would be likely to slip past each other if they came together as they ordinarily would on a straight track. The matter was properly for the jury.

2. Rule 26 of defendant, which was furnished to plaintiff, and which he was required to read, is as follows: "Great care must be exercised by all persons when coupling cars. As the coupling apparatus cannot be uniform in style, size, and strength, and is liable to be broken, and from various causes to render it dangerous to expose the hands, arms, or person of those engaged in coupling, all employes are enjoined, before making a coupling, to examine and know the kind

and condition of draw-head, draw-bar, link, and coupling apparatus; and are directed not to place in trains cars with defective couplers. They will report all such to the yard-master and conductor. Sufficient time will be allowed in all cases to make the required examination."

The defendant urges, as an act of contributory negligence, the omission of plaintiff to read this rule. Exception is also taken to the construction put upon the rule by the court. It is not necessary for us to determine whether the court below was strictly correct in saying that there was nothing in this rule which, had it been read and observed by the plaintiff, would have tended to prevent the accident. It is enough for present purposes to say that the plaintiff in fact knew all that the rule required him to know, to wit, the kind and condition of the draw-heads, draw-bar, link, and coupling apparatus. There was nothing defective in the couplers, within the meaning of the rule; that is, they were not out of repair. They were perfect of their kind, but not a safe kind. The court was correct in saying that, under the rule, "if a brakeman was familiar with the kind of draw-head, and it appeared sound, then he fulfilled his duty under that rule by coupling." The rule really contains nothing more than what every brakeman would be bound to know and understand without any special rule on the subject. It is not pretended that plaintiff was guilty of any negligence in the mode of making the coupling. If he made it at all, he had to do it as he did. If he had read the rule, it would not have suggested any safer mode of performing the act.

Order affirmed.