JEFFREY YOUNG, A MINOR, BY HIS FATHER
AND NATURAL GUARDIAN, WILLIAM YOUNG,
AND ANOTHER v. DALE LEE HANSEN.

209 N. W. 2d 392.

June 29, 1973—No. 43827.

*Jardine, Logan & O'Brien* and *Michael J. Healey,* for appellant.

*Torinus & Knutson* and *Richard H. Knutson,* for respondents.

Heard before Otis, Kelly, MacLaughlin, and Gillespie, JJ.

ROBERT B. GILLESPIE, JUSTICE.*

Defendant appeals from judgments entered in favor of plaintiffs and from an order denying his motion for a new trial. Plaintiff Jeffrey Young, a minor, by his father, plaintiff William Young, sought damages for personal injury Jeffrey sustained when struck by defendant's car, and William Young sought consequential damages. The jury, upon a five-sixths verdict, found negligence on the part of defendant only and awarded $45,000 to Jeffrey and $555.55 to his father. The trial court granted a remittitur of $15,000. On appeal, defendant contends (1) that the court should have instructed the jury that plaintiff was negligent as a matter of law; (2) that the court erred in instructing the jury that it could consider future loss or diminution of plaintiff's earning capacity; (3) that the reduced verdict of $30,000 is excessive; (4) that the court had no jurisdiction to enter judgment in an amount greater than that requested in the pleadings; and (5) that a five-sixths verdict is no longer authorized by law.

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

About 6 p.m. on November 26, 1969, plaintiff Jeffrey Young, an 18-year-old pedestrian, was standing near his dump truck emptying garbage into the left side of the vehicle when he was struck by a 1967 Pontiac owned and driven by defendant, Dale Hansen. Plaintiff's truck was parked facing south at the west curb on Hamline Avenue North, a two-way road 50 feet wide. Defendant was proceeding south on Hamline Avenue. The street was wet and it was dark, but visibility was not affected by any adverse weather conditions nor were there any distracting circumstances or other traffic at the time of the accident. Plaintiff's truck was properly lighted with taillights and flasher clearance lights. Defendant did not see the truck until after the accident and did not see the plaintiff until he was 25 to 30 feet away. Plaintiff had started across Hamline Avenue from east to west and had observed the lights of an oncoming car about 3 blocks away. As he reached half way into the east half of the street, he looked again and observed no traffic except the lights of a car coming south at a slow rate of speed further down the road. Plaintiff never looked for traffic again as he walked quickly across the street to his truck. Plaintiff was struck by the right front portion of defendant's car and was thrown about 70 feet by the impact. He was knocked unconscious and taken to a hospital. His legs were numb but X-rays disclosed no broken bones. He spent 1 week in bed plus 1 week of house confinement and suffered pains in his legs and back. He was black and blue from his waist down; his right leg was red and swollen; and he had difficulty in walking or bending. On December 2, 1969, he first visited his doctor who treated him from time to time with pain pills and therapy for a period of about 2 years. His doctor testified that an indentation in plaintiff's right thigh was caused by ruptured muscles in the thigh and the destruction of muscle fibers with resultant neurocirculatory disturbance in the leg. The doctor gave his medical opinion that plaintiff has a limited permanent disability in the area of the thigh as a result of the injuries he received in the accident. Evidence was offered that

plaintiff suffered stiffness and coldness in his right leg with considerable pain from the date of the accident to the date of trial in February 1972; that he tired easily, was curtailed in ordinary physical activities, such as running and stooping, and found it very difficult and painful to waterski or hunt; that he was unable to carry on the work required in a mechanic's job for which he had been trained at a vocational school and had quit after 2 months in October 1971 because the work was too painful. Two weeks from the date of the accident, plaintiff returned to work on his rubbish-hauling business to a limited extent, driving the truck and handling lighter loads. In the spring of 1970 and thereafter, he carried on his business, working 3 to 6 hours a day, seasonally, 3 to 5 days a week, but he testified he tired quickly and experienced pain and discomfort in his right leg. His proven loss of income to the date of trial was approximately $300.

1.   The evidence in the case amply justified the jury in finding defendant negligent and that his negligence was a direct cause of the accident. Contrary to defendant's contention that the trial court was in error in refusing to find plaintiff negligent as a matter of law, the facts of the case presented a jury question on that issue, and the jury found that plaintiff was not negligent. The applicable law was fairly and adequately presented to the jury in the trial court's instructions, which included the following portion of Minn. St. 169.21, subd. 3:

"Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway."

The court also instructed the jury generally that both a driver and pedestrian have a duty to keep a proper lookout. Unless a verdict is manifestly and palpably contrary to the evidence viewed in the light most favorable to the prevailing party, it must be sustained by this court. Richie v. Elmquist, 283 Minn. 375, 168 N. W. 2d 332 (1969). The jury by its verdict may well

have adopted the view that plaintiff had completed his crossing of the street and was in the act of unloading his rubbish basket into his truck while standing close to the truck and that in so doing was exercising due care. This determination was justified by the evidence, and this court finds no quarrel with the jury's determination.

2. Defendant contends that there was insufficient evidence to warrant an instruction by the trial court that the jury in assessing damages could consider future loss or diminution in plaintiff's earning capacity. Where a permanent impairment or loss of earning capacity is claimed by a plaintiff, he must establish by a fair preponderance of the evidence the extent to which such impairment is reasonably certain to occur. Fifer v. Nelson, 295 Minn. 313, 204 N. W. 2d 422 (1973); Carpenter v. Nelson, 257 Minn. 424, 101 N. W. 2d 918 (1960). Loss or diminution of future earning capacity is an item of general damages. It permits recovery for loss or diminution of the power to earn in the future and is based upon such factors as the plaintiff's age, life expectancy, health, habits, occupation, talents, skill, experience, training, and industry. Wilson v. Sorge, 256 Minn. 125, 97 N. W. 2d 477 (1959).

At trial, plaintiff testified that he still experienced pain after working, that his back became stiff and sore and that he had sustained some loss of strength in it, and that his right leg became weaker the longer he worked. Further, he testified that he was unable to stay in the cold for any period of time due to the coldness in his feet. Plaintiff's doctor concluded that the accident had caused the rupture of muscle fibers in plaintiff's thigh and as a result plaintiff suffered a limited permanent disability. In light of such evidence, we conclude that the trial court did not err in instructing the jury regarding future loss or diminution of earning capacity.

3. Defendant further contends that the verdict, even reduced to $30,000 by order of the trial court, is excessive and was influenced by passion and prejudice. The trial court granted a re-

mittitur of 1/3 of the jury's award of $45,000, concluding that the sum of $30,000, though liberal, did not shock the conscience. We agree that the sum of $30,000 is a liberal money allowance for the injuries sustained by plaintiff. However, the judicial function of determining the amount of a verdict in a personal injury case has been historically preserved for the jury and where the trial courts have allowed a verdict to stand after a claim of excessiveness of the verdict, the appellate court will not interfere unless it clearly appears that it was an abuse of discretion to let the verdict stand. DeWitt v. Schuhbauer, 287 Minn. 279, 177 N. W. 2d 790 (1970). Our court stated in Cameron v. Evans, 241 Minn. 200, 209, 62 N. W. 2d 793, 799 (1954) :

"* * * Whether a verdict should be set aside as excessive rests largely in the discretion of the trial court. It is the duty of the trial court to keep the jury within the bounds of reason and the duty of this court to keep the trial court within the bounds of judicial discretion. The action of the trial court will not be reversed on appeal unless it clearly appears that there was an abuse of discretion. No particular purpose is served by comparing verdicts. No two cases are alike. There is no yardstick that can be applied to all cases. The peculiar facts of each case must serve to measure the damages."

The court below passed upon defendant's motion and granted adequate relief by remittitur. The trial court, as well as the jury, had a right to consider plaintiff's past, present, and future pain; his life expectancy; the effect that the injury may have upon his future earning power and his pursuit of the amenities of life; the cosmetic disfigurement and the permanent partial disability involved; and the inflationary trend of the economy. DeWitt v. Schuhbauer, *supra*. There is no basis for this court to find that the trial court did not act within the bounds of judicial discretion in this case. He heard the evidence, he observed the plaintiff, and he saw the indentation on plaintiff's leg. He duly exercised his judicial discretion in substantially reducing the jury's ver-

dict. We find no fault with his order of remittitur and affirm his decision.

4. The judgment herein entered exceeds by $5,000 the amount claimed in the ad damnum clause in plaintiffs' complaint with respect to Jeffrey Young's damages. It is well settled that a plaintiff's recovery is not limited to the amount stated in the complaint in the absence of circumstances which might prejudice the defendant. Wallace v. Nelson, 287 Minn. 438, 178 N. W. 2d 698 (1970). The record here shows no prejudice to the defendant. Rule 54.03, Rules of Civil Procedure.

5. Defendant claims that the trial court erred in accepting a five-sixths verdict and in instructing the jury that after six hours of deliberation five jurors could agree and complete the verdict form.

Since 1863 and prior to 1921, the Minnesota petit jury statute, now Minn. St. 593.01, read as follows:

"A petit jury is a body of twelve men, impaneled and sworn in the district court to try and determine, by a true and unanimous verdict, any question or issue of fact in a civil or criminal action or proceeding, according to law and the evidence as given them in court." G. S. 1913, c. 78, § 7960.

By L. 1921, c. 365, § 1, the law was amended by adding the words "or women, or both," following the words "twelve men."

The legislature in L. 1913, c. 63, § 1, provided for a five-sixths verdict in civil actions after 12 hours of deliberation. An amendment contained in L. 1955, c. 220, § 1, reduced the 12 hours of deliberation required to 6 hours. Minn. St. 546.17 then and now reads in part:

"In any civil action or proceeding in any court of record the jury therein may return a verdict, after six hours of deliberation, upon an agreement by five-sixths of its number."

In 1971, Minn. St. 1969, § 593.01, was amended by L. 1971, c. 917, and now provides in part:

"Subdivision 1. *Notwithstanding any law or rule of court*

*to the contrary,* a petit jury is a body of *six* men or women, or both, impaneled and sworn in *any* court to try and determine, by a true and unanimous verdict, any question or issue of fact in a civil or criminal action or proceeding, according to law and the evidence given them in court." (Italics supplied.)

Subd. 2 was added and provides that in a criminal action where the offense charged is a gross misdemeanor or a felony the jury shall be a body of 12 persons unless the defendant consents to a jury of 6 persons.

There can be no question that, prior to L. 1971, c. 917, in a civil case a petit jury of 12 could bring in a five-sixths verdict by reason of the provisions in Minn. St. 546.17. This statute effectively changed "unanimous verdict" as provided in § 593.01 to "an agreement by five-sixths of its number." Defendant contends that the 1971 act in reenacting the provision for a "unanimous verdict" in effect repealed the five-sixths verdict authorized by § 546.17. We do not agree and hold that the 1971 act merely amended the requirement of 12 men or women on a petit jury in a district court case to 6 in any court.

In construing the statutes of this state, this court should follow the guidelines that the legislature has laid down in Minn. St. 645.38, which reads:

"A law which reenacts the provisions of an earlier law shall not be construed to repeal an intermediate law which modified such earlier law. Such intermediate law shall be construed to remain in force and to modify the reenactment in the same manner as it modified the earlier law."

The 1971 reenactment of that part of § 593.01 providing for a "unanimous verdict" did not repeal the five-sixths verdict provided by the intermediate law, § 546.17, which had modified the "unanimous verdict" requirement of § 593.01. Therefore, the modification of the unanimous verdict requirement by § 546.17 must be construed to remain in force. See, State ex rel. Village of Buhl v. Borgen, 231 Minn. 317, 43 N. W. 2d 95 (1950).

We have considered the fact that the 1971 reenactment (L. 1971, c. 917) contains the words "[n]otwithstanding any law or rule of court to the contrary," and we construe the same to affect only the reduction of the number of jurors required and the change from "district court" to "any court." These are the only changes affirmatively made in the prior statute. It is obvious that the legislature wanted six-person juries in any civil court, any existing laws or rules of court notwithstanding. If it had in mind, as defendant suggests, unanimous verdicts only, it could have repealed § 546.17.

The judgment below is affirmed.

MR. CHIEF JUSTICE KNUTSON took no part in the consideration or decision of this case.