# GILBERT MOTEBERG v. WALTER JOHNSON AND OTHERS.

210 N. W. 2d 27.

July 13, 1973—No. 43841.

*Padden, Dickel, Johannson & Wall* and *Kenneth Johannson,* for appellants.

*Lamb, Schaefer & McNair* and *Raymond A. Lamb,* for respondent.

Heard before Knutson, C. J., and Otis, Kelly, and Gillespie, JJ.

ROBERT B. GILLESPIE, JUSTICE.*

Defendants, individually and d.b.a. Johnson Brothers, appeal from the order of the trial court denying their motion for a new trial. Plaintiff, Gilbert Moteberg, brought an action to recover damages for injuries suffered as the result of his arm becoming entangled in a farm machine owned by defendants. The jury returned a verdict in the amount of $75,000, finding plaintiff 45 percent negligent and defendants 55 percent negligent.[1] Defendants moved alternatively for judgment notwithstanding the verdict or a new trial. The trial court denied defendants' motion on condition that plaintiff agree to a remittitur reducing his damages to $60,000. Plaintiff agreed.

Defendants contend on appeal (1) that the court should have submitted assumption of risk as a separate, distinct, and absolute defense; (2) that the court erred in admitting into evidence colored photographs of plaintiff's injured arm; (3) that the verdict was excessive; (4) that the court erred in certain of its instructions regarding duties of a master and a servant and in submitting loss of earning capacity as an element of damage; and (5) that the court erred in admitting opinion evidence that the machine was unsafe.

On the date of the accident, May 22, 1970, plaintiff, a 64-year-old farm laborer with approximately 50 years experience, had been employed by defendants for 12 years. He performed all types of general farm work. He was experienced in operating and repairing farm machines. On the day of the injury, Walter Johnson directed plaintiff to aid him in seeding and fertilizing operations. On humid days, defendants followed the practice of

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

[1] Defendants brought a third-party action against Kirschmann Manufacturing Company for indemnity or contribution, but the jury concluded that the product manufactured by Kirschmann and used by plaintiff was not in a defective condition unreasonably dangerous to a user and that third-party defendant Kirschmann was not negligent.

having a man ride on the back of the grain drill to observe the flow of the fertilizer and to clear the plastic conduit tubes when they became clogged. Normally, the tubes are cleared by reaming or by removing the tubes and tapping them against a hard object. When the grain drill is stationary, the fertilizer unit has no moving parts, and when towed the units discharge grain and fertilizer.

Plaintiff became entangled in the shaft, which transmits energy from the grain drill axle to the fertilizer attachment, when he attempted to clear a tube while the machine was in motion. After he inserted his right arm between the jack shaft and the fertilizer hopper, his clothing became entangled on the hub or in the gears of the shaft, crushing and breaking his right arm.

Plaintiff had never ridden this machine with the fertilizer attachment at any time prior to the accident, but he had ridden on other drills. Defendants admit that they never specifically instructed plaintiff on how to ride the drill or how the gears worked. Hjelmer Johnson conceded he knew that one bolt on the hub of the shaft did stick out more than the others and was dangerous. According to Walter Johnson, plaintiff was instructed that if the fertilizer became clogged, plaintiff was to signal defendant Walter Johnson to stop the tractor pulling the units. Plaintiff testified that they had stopped once prior to the accident to clear the tubes.

Plaintiff's expert, a mechanical engineer, testified that in his opinion the bolts on the hub, both the original bolts and the replacement bolt which protruded more than the others, constituted a dangerous condition. Defendants' expert engineer testified that the set screws in the shaft's hub did not create a dangerous condition.

Colored photographs of plaintiff's injury were introduced into evidence after the testimony of plaintiff's treating physician, Dr. Kenneth Covey, that they fairly and accurately represented the injury as the doctor saw it some 2 months after the accident. The doctor then went on to describe the injury and the subse-

quent surgery required. Dr. Covey gave plaintiff a 90-percent permanent disability rating while defendants' medical expert, Dr. B. J. Clayburgh, gave plaintiff a 50- to 60-percent permanent disability rating. Both doctors were well-qualified orthopedic surgeons.

Damages suffered by plaintiff as the result of medical expenses were $4,841.04. Viewing the evidence in the light most favorable to plaintiff, Moteberg's yearly earnings were slightly more than $5,000.

The trial judge instructed the jury generally regarding negligence. Then, more specifically, the court instructed the jury as to the negligence of defendants and the several duties owed by a master to his servant. The court went on to instruct as to plaintiff's general duty of care for his own safety and added that "a person who assumes the risk of his own injury is negligent." This statement was followed immediately by an instruction regarding assumption of risk as set out in Minnesota Jury Instruction Guides, Instruction 135. Defendants requested a special verdict question on assumption of risk, but none was submitted to the jury.

In its special verdict, the jury found that both defendants and plaintiff were negligent and that the negligence of each was a direct cause of the injury.

1. *Should the court have submitted the question of assumption of risk as a separate defense?*

As stated, defendants requested the submission of a special verdict question relative to assumption of risk, but their request was denied and a separate question was not included in the special verdict form. Thus, the learned judge below anticipated this court's ruling in Springrose v. Willmore, 292 Minn. 23, 192 N. W. 2d 826 (1971), wherein the doctrine of secondary assumption of risk, as such, was recast as an aspect of negligence only and no longer an absolute bar to recovery. However, Springrose gave prospective application only to the decision. See, Gottskalkson v. City of Canby, 296 Minn. 212, 207 N. W. 2d 361 (1973).

The court below relied upon the Wisconsin law as enunciated in Colson v. Rule, 15 Wis. 2d 387, 113 N. W. 2d 21 (1962), wherein that court held that any conduct of a farm laborer which evinced a want of ordinary care for his own safety constituted contributory negligence and was subject to comparison under the Wisconsin comparative negligence statute. The Wisconsin court stated:

"* * * This will have the effect of largely, if not entirely, abrogating in farm-labor cases the defense of assumption of risk as an absolute bar to recovery where the conduct alleged falls short of express consent." 15 Wis. 2d 395, 113 N. W. 2d 25.

In Colson, the court relied heavily upon its decision in McConville v. State Farm Mutual Auto. Ins. Co. 15 Wis. 2d 374, 113 N. W. 2d 14 (1962), which held that a guest-passenger's assumption of risk, implied from his willingness to proceed in the face of a known hazard, was no longer a defense separate from contributory negligence.

The Wisconsin decisions do not control where, as here, statutory interpretation is not in issue. In Minnesota, assumption of risk was a bar to recovery in 1962 and remained so until Springrose v. Willmore, *supra,* which abolished the defense only prospectively. Parness v. Economics Laboratory, Inc. 284 Minn. 381, 170 N. W. 2d 554 (1969). See, Fick v. Wolfinger, 293 Minn. 483, 198 N. W. 2d 146 (1972); Renne v. Gustafson, 292 Minn. 218, 194 N. W. 2d 267 (1972). Under the evidence in the case before us, the question of whether plaintiff forfeited all rights to recover for defendants' negligence by his assumption of risk from known danger, i. e., whether he had knowledge of the risk and appreciated it and whether he had a choice between avoiding the risk or chancing it and voluntarily chose to chance it, was for the jury. Logan v. Hennepin Ave. Methodist Episcopal Church, 210 Minn. 96, 297 N. W. 333 (1941). We hold, therefore, that the court below erred in failing to submit to the jury the question of assumption of risk as a separate defense.

2. *Were the color photographs of plaintiff's injury properly admitted by the trial court?*

We answer in the affirmative. It is well settled that in personal injury actions photographs are admissible to show the existence and nature of injuries providing the photographs are relevant and accurately portray the injuries at the time they were taken. Knox v. City of Granite Falls, 245 Minn. 11, 72 N. W. 2d 67 (1955). Photographs have been admitted in connection with the testimony of the treating physician where they portray the condition which the doctor is attempting to describe. Moeller v. Hauser, 237 Minn. 368, 54 N. W. 2d 639 (1952). Such was the situation in the instant case. See, State v. Tinklenberg, 292 Minn. 271, 194 N. W. 2d 590 (1972); State v. DeZeler, 230 Minn. 39, 41 N. W. 2d 313 (1950).

3. *Was the verdict of $75,000 as reduced to $60,000 by the court excessive?*

We do not so find. The judicial function of determining the amount of a verdict in a personal injury case has been historically preserved for the jury, and where the trial courts have allowed a verdict to stand after a claim that it is excessive, an appellate court will not interfere with the trial court's disposition of the claim unless it clearly appears that the trial court's action was an abuse of discretion. DeWitt v. Schuhbauer, 287 Minn. 279, 177 N. W. 2d 790 (1970). In considering whether a verdict is excessive, a comparison with previous verdicts is not justified because of the variations in facts and changes in the economy. DeWitt v. Schuhbauer, *supra;* Young v. Hansen, 296 Minn. 430, 209 N. W. 2d 392 (1973); Cameron v. Evans, 241 Minn. 200, 62 N. W. 2d 793 (1954).

Viewing the evidence in the light most favorable to plaintiff, the award as reduced is not excessive. Plaintiff's medical expenses were $4,841.04. Plaintiff's maximum yearly income was slightly over $5,000. He had lost almost 2 years of earnings prior to trial. The injury resulted in serious pain and gross disfigurement. The permanent destruction of plaintiff's right arm ren-

dered the arm useless for productive purposes in the only field of endeavor known to plaintiff. The court below carefully analyzed the elements of damage to be considered by the jury and found that a reduction of $15,000 in the verdict removed any question of excessiveness. The jury, as well as the trial court in review, had a right to consider plaintiff's past and future pain and suffering, his life expectancy, the effect that the injury would have upon his future earning power and his pursuit of the amenities of life, the degree of disfigurement and the permanent partial disability involved, and the inflationary trend of the economy. The trial court properly exercised its judicial discretion in reducing the verdict, and, as reduced, the verdict of the jury was not excessive.

4. *Did the court err in its instructions to the jury?*

A. Defendants contend that the trial court erred in instructing the jury that ordinarily a servant is not required to make an inspection of the tools furnished him by his master. As a general rule, a servant is not bound to exercise reasonable care to discover dangers not obvious to ordinary observation. The measure of his care is ordinary observation. Hacker v. Berkner, 263 Minn. 278, 117 N. W. 2d 13 (1962). Accordingly, an employee is not required to make an inspection of the tools which are furnished him. We find no error in the trial court's instructions.

B. Defendants also contend that the trial court erred in instructing the jury that in the absence of knowledge to the contrary and in the absence of circumstances that caution him or would caution a reasonably prudent person in a like position to the contrary, a servant may assume that the master has furnished him with safe tools and machines with which to perform his work, and he may rely and act on that assumption. We find no error in the instruction as presented to the jury. This court, as early as Russell v. Minneapolis & St. Louis Ry. Co. 32 Minn. 230, 20 N. W. 147 (1884), stated that an employee has the right to assume, in the absence of notice to the contrary, or something to put him on inquiry, that his master has exercised ordinary

care to supply him with a safe instrument. See, 11B Dunnell, Dig. (3 ed.) § 5912.

C. Defendants argue that the trial court erred in instructing the jury that the master's failure to perform or fulfill any of the duties set out by the trial court constituted negligence. We do not agree. The violation of a legal duty owed to another is negligence. See, Rasmussen v. The Prudential Ins. Co. 277 Minn. 266, 152 N. W. 2d 359 (1967) ; 28 Wd. & Phr. (Perm. ed.) p. 616. The court could have appropriately included in its instruction the last paragraph of Minnesota Jury Instruction Guides, Instruction 301.[2] However, considering the instructions as a whole, we find no prejudicial error.

D. Where a permanent impairment or loss of earning capacity is claimed by a plaintiff, he must establish by a fair preponderance of the evidence the extent to which such impairment is reasonably certain to occur. Carpenter v. Nelson, 257 Minn. 424, 101 N. W. 2d 918 (1960). Damages for loss of future earning capacity should be predicated upon a person's future earning power and his age, skill, training, experience, and industry should be considered. Mack v. McGrath, 276 Minn. 419, 150 N. W. 2d 681 (1967).

The evidence presented at trial regarding plaintiff's employment as a farm laborer dependent on the use of his arms for a livelihood, the extent of his injuries, and the extent of his loss of wages and future earning capacity was sufficient to establish by a fair preponderance of the evidence that a loss of earning capacity was reasonably certain to occur.

5. *Did the trial court err in admitting opinion evidence that the machine was unsafe?*

The general rule is that the opinions of expert witnesses are admissible whenever the subject of inquiry is such that inexperienced persons are unlikely to prove capable of forming a cor-

---

[2] "Whether or not a duty * * * has been violated depends upon the risks of the situation, the dangers known or reasonably to have been foreseen, and all of the then existing circumstances."

rect judgment without assistance. Tracey v. City of Minneapolis, 185 Minn. 380, 241 N. W. 390 (1932); Greer v. G. N. Ry. Co. 115 Minn. 213, 132 N. W. 6 (1911).

In Greer, the court concluded that it was within the discretion of the trial judge to permit an expert to testify that the machine was dangerous. The court noted that the machine was complicated, and the danger was not necessarily apparent to the ordinary juror.

Both plaintiff and defendants called engineering experts to testify with regard to the machine involved, and each testified as to its safety. Defendants' expert stated that the set screws in the shaft's hub did not create a dangerous condition and plaintiff's expert stated that the same constituted a dangerous condition. Therefore, the jury had presented to it diametrically opposite opinions.

We recognize that experts, by their opinion testimony, should not be permitted to answer the ultimate question of whether a party's conduct is negligence. Tracey v. City of Minneapolis, *supra*; Goodsell v. Taylor, 41 Minn. 207, 42 N. W. 873 (1889). However, one of the questions before the jury was whether the machine was defective in design, surely a matter outside the common knowledge and experience of the jury, and the court properly exercised his discretion in admitting the opinions.

We reverse and remand for a trial limited to the issue of liability only, the issue of damages having been fully determined in the prior trial.

Reversed and remanded with instructions.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.