Elvan HAASE and Robert Thomas, Plaintiffs,

Aetna Life and Casualty, Respondent,

v.

William HAASE, Appellant,

Pirkle Refrigerated Freight Lines, Inc., Respondent.

No. C5–84–1699.

Court of Appeals of Minnesota.

June 11, 1985.

Review Denied Aug. 29, 1985.

Wayne J. Studer, Paul H. Jacobson & Associates, Minneapolis, for Aetna Life and Cas.

Robert W. Kettering, Jr., Brian J. Love, Arthur, Chapman & Michaelson, Minneapolis, for William Haase.

Robert Salmon, David B. Orfield, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Pirkle Refrigerated·Freight Lines, Inc.

Heard, considered and decided by FORSBERG, P.J., and WOZNIAK and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

This appeal is from a judgment on a subrogation claim brought by an employer and its workers' compensation insurer against a third-party tortfeasor after a *Naig* settlement was entered into between the injured employee and the tortfeasor. Appellants contend the verdict of permanent disability was not supported by the evidence, and that the judgment improperly included a sum for workers' compensation benefits payable in the future. We affirm.

## FACTS

On February 11, 1978, Robert Thomas was driving a tractor-trailer owned by his employer, Dahlman, Inc., on an interstate highway near Columbus, Montana. Behind Thomas was appellant William Haase, driving his own tractor-trailer, which was leased to appellant Pirkle Refrigerated Freight Lines (hereafter, Pirkle). As Thomas drove down a hill, he entered a "white out" caused by a snowplow, which severely limited visibility. Shortly thereafter, the Haase truck entered the same area and struck the rear of Thomas' rig.

Several actions ensued. The issues on this appeal arise out of respondent Aetna's workers' compensation payments to Thomas, and its subrogation claim against appellants Haase and Pirkle.

On the second day of the trial of Thomas' negligence claim against Haase and Pirkle, these parties agreed to a settlement for $100,000, pursuant to a *Naig* release preserving the subrogation claim of Thomas' employer, Dahlman, and Aetna, its workers' compensation insurer. *Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn. 1977). Dahlman and Aetna were advised of the settlement but did not participate in it. Shortly after this settlement, Aetna entered into an agreement to pay Thomas

$80,000 as a lump-sum settlement for all future workers' compensation benefits.

Appellants claim that the $80,000 agreement was brought before a settlement judge in the workers' compensation division during the course of trial. Appellants claim they did not have an opportunity to participate in the settlement approval hearing. *See* Minn.Stat. § 176.521, subd. 2 (1978).

The $80,000 settlement was finalized on November 22, 1983, the second day of trial. Aetna then sought to amend its complaint to add a subrogation claim for the lump-sum settlement for future benefits. The trial court allowed this amendment, over Haase's objection.

The jury returned a verdict finding Haase negligent, and his negligence 100% responsible for the collision. It found that all of Thomas' lost wages and medical expenses from the time of his spinal fusion were the result of the collision. Finally, the jury found a 27% permanent partial disability to the back, 30% to the left arm, and 10% to the right arm, and found that the 51-year-old Thomas would be incapable of undertaking substantial gainful activity for a period of 14 years.

The trial court awarded judgment to Aetna against Haase and Pirkle for past workers' compensation benefits, and for the $80,000 lump-sum settlement for future benefits. It found that amount a reasonable present value for future benefits payable over the 14 years' disability found by the jury.

Haase's motion for post-trial relief was denied, except that the court corrected the judgment to delete reimbursement for compensation paid to Thomas during a 10-month layoff found by the jury not to have been caused by the accident.

### ISSUES

1. Did Aetna's statutory subrogation claim include a claim for workers' compensation benefits payable in the future?

2. Did the trial court err in allowing Aetna to amend its complaint on the second day of trial to incorporate the claim for future benefits?

3. Was there sufficient evidence to support the jury's conclusion that Thomas would be incapable of performing any substantial gainful activity for 14 years?

4. Did the trial court properly award $80,000 to Aetna on its subrogation claim for future benefits?

### ANALYSIS

#### I.

■ The key question on appeal is whether the court erred in awarding Aetna a sum for future workers' compensation benefits payable to Thomas. The trial court in awarding this sum applied Minn. Stat. § 176.061, subd. 10 (Supp.1983), allowing employers and insurers a right of indemnity for workers' compensation benefits "paid or payable." Subdivision 10 was added by an amendment effective July 1, 1983, five years after the injury but before the date of trial. We do not find this subdivision applicable, but conclude that prior law gave Aetna a subrogation claim for future benefits.

Prior to 1983, reimbursement of the employer from a tortfeasor for workers' compensation benefits was governed by Minn. Stat. § 176.061, subds. 5, 6 (1978). Subdivision 5 outlines the procedures in bringing the third-party action, and gives the employer or its insurer a subrogation right to the employee's claims. Subdivision 6 outlines the formula for splitting a third-party award won by the employee against a tortfeasor. The employee receives about ⅓ of the third-party recovery, and the employer receives most of the remainder to reimburse it for workers' compensation paid. Any balance remaining from the judgment is paid to the employee and acts as a "credit" to the employer for benefits that may be paid in the future.

■ Appellants contend that this "credit" mechanism for splitting an award between the employee and his employer or its insurer is the sole means of providing

reimbursement for workers' compensation benefits payable in the future. We conclude that a *Naig* settlement supersedes the scheme for allocation of the third-party recovery established in subdivision 6, including the credit for future benefits, and that the employer or its insurer must be allowed to recover those benefits as part of its subrogation claim.

This result was forecast in *Lang v. William Bros. Boiler & Manufacturing Co.*, 250 Minn. 521, 85 N.W.2d 412 (1957), in which the court held that, following the employee's settlement with the third-party tortfeasor, the employer's insurer could not only apply the credit for future benefits but would also have a subrogation claim for future benefits not covered by the credit. *Id.* at 531, 85 N.W.2d at 419. *Lang* did not involve a settlement distinguishing between damages recoverable under workers' compensation and those not recoverable, as does the *Naig* settlement at issue here. It follows from *Lang*, however, that if an employer or insurer enjoying the credit also has a subrogation claim, an employer denied the credit because of a *Naig* settlement should not be denied the subrogation claim.

The supreme court has followed *Lang* in two recent decisions involving settlements of third-party actions. In *Aetna Life & Casualty v. Anderson*, 310 N.W.2d 91, 95 (Minn.1981), the court rejected the argument that the statutory credit and a subrogation claim for future benefits are mutually exclusive. In *Paine v. Water Works Supply Co.*, 269 N.W.2d 725, 730 (Minn. 1978), the court indicated that the statutory credit is the insurer's exclusive remedy only to the extent that the settlement covers claims compensable under workers' compensation. Neither *Paine* nor *Aetna Life* involved a settlement complying with *Naig*.

Here the employee, Thomas, settled only for those claims which were not recoverable under workers' compensation. Thus, Aetna has no right to any share of the settlement through the workers' compensation allocation scheme, including a credit

for future payments, Minn.Stat. § 176.061, subd. 6. Thomas also waived any share of a future recovery made by Aetna under the workers' compensation laws, thus eliminating any prospect of a statutorily-allocated settlement.

■ An employer or insurer who pays workers' compensation benefits is subrogated to the claims of its employee against a third-party tortfeasor. Minn.Stat. § 176.-061, subd. 5. Impairment of future earning capacity is an item of general damages recoverable in a tort action, *Capriotti v. Beck*, 264 Minn. 39, 117 N.W.2d 563 (1962), and also compensable under workers' compensation. The supreme court has recently held that a negligent employer may be liable for contribution to a third-party tortfeasor up to the amount of workers' compensation paid and payable in the future. *Wilken v. International Harvester Co.*, 363 N.W.2d 763, 767 (Minn.1985). It would be inconsistent to hold that a non-negligent employer had no subrogation claim to the same future benefits.

■ Appellants contend that the lump-sum settlement between Thomas and Aetna was not in accord with the policy of the workers' compensation system favoring continuing compensation. This argument could have been raised by intervention in the workers' compensation case. In the tort action, however, a lump-sum award for future damages was entirely appropriate. *See Wilken*, 363 N.W.2d at 767.

■ A third-party tortfeasor's interest in the workers' compensation system is solely that of limiting its liability to its established fault. *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 122, 257 N.W.2d 679, 685 (Minn.1977). The jury found Haase 100% at fault for the accident. Regardless of the workers' compensation system, Thomas had a right to recover all his future damages from Haase and Pirkle. The *Naig* settlement agreed to by Haase and Pirkle left outstanding all claims for future as well as past damages covered by the workers' compensation system. They have no claim that that system, and in particular

its credit mechanism for allocating settlement proceeds, should shield them from liability for future damages.

## II.

The trial court allowed Aetna to amend its complaint to add the subrogation claim for $80,000 of future compensation benefits. The trial court noted that appellants were necessarily prepared to defend a future benefits subrogation claim since they would have had to defend Thomas' claims regarding loss of future earning capacity. Appellants argue that the addition of the subrogation claim during trial was an abuse of discretion.

Generally, it is within the trial court's discretion to allow an amendment to the complaint during trial. *Peterson v. Bishop*, 294 Minn. 551, 202 N.W.2d 212 (1972). Here the effect was merely a substitution of parties making essentially the same claim, which could not have surprised appellants nor prevented their presentation of an effective defense. *Id.*

## III.

Appellants argue that there was insufficient evidence to support the jury's verdict that Thomas would be unable to work for 14 years.

A jury verdict will be upheld unless it is manifestly contrary to the evidence. *Levienn v. Metropolitan Transit Commission*, 297 N.W.2d 272, 273 (Minn. 1980). Here there was evidence in the record that supports the jury's verdict. As a result of the accident, Thomas had to undergo a cervical fusion; has marked atrophy and loss of use of his dominant, left arm; and has lower back and right leg pain due to further disc damage in the lumbar area of the spine. Thomas has only an eighth grade education, was 51 years old at the time of trial, and had driven trucks for the same employer since 1957. He does not have skills that would allow him to do office work.

Thomas did continue to work after the accident, but only due to the accommodation of his employer. His medical problems increased until he could only drive two hours at one time. In 1980, his physician, a certified neurologist, told him he was no longer capable of truck driving. Even after his cervical fusion operation, the doctor advised Thomas not to return to truck driving.

Appellants also claim the court erred by submitting to the jury the question of the degree of Thomas' disability because the only expert asked provided an expert opinion as to degree of permanent disability. It has been held, however, that medical testimony, although helpful, is not dispositive on the issue of disability. *Hosking v. Metropolitan House Movers Corp.*, 272 Minn. 390, 138 N.W.2d 404 (1965). In a tort action, the issue is not merely loss of function and use of a body part, *see Hosking* (workers' compensation case), but loss of the power to earn in the future, which is based on factors such as age, occupation, talents, experience, training and industry. *Young v. Hansen*, 296 Minn. 430, 434, 209 N.W.2d 392, 395 (1973). This was a fact question for the jury to decide. *Id.*

## IV.

Appellants also object to the award of damages for future benefits on the grounds that the lump-sum settlement was entered into without appellants' participation.

The workers' compensation law gives the right to participate in settlement approval hearings to parties who have intervened in the case. Minn.Stat. § 176.521, subd. 2 (Supp.1983). Appellants may have had an interest permitting them to intervene, but failed to apply for intervention, despite having notice of Thomas' workers' compensation claim. *See* Minn.Stat. § 176.-361 (Supp.1983).

Appellants' objections to the workers' compensation lump-sum settlement misconstrue the nature of their liability to Aetna. Aetna's claim was not indemnity for benefits paid to Thomas, but subrogation to the claims of Thomas against appel-

lants. Thus, appellants have no complaint as to the manner or amount of the lump-sum settlement as long as that amount did not exceed the damages recoverable against them by Thomas for lost earning capacity.

The amount of damages, including loss of future earning capacity, is a question for the jury. *Young*, 296 Minn. at 434–35, 209 N.W.2d at 395. The trial court, applying principles of indemnity rather than subrogation, found liability for the $80,000 settlement, but also found that Thomas' future damages exceeded this amount. In light of the jury's finding of total disability for 14 years, this finding of future damages was plainly justified.

## DECISION

The trial court properly allowed a claim for workers' compensation benefits payable in the future. There was no abuse of discretion in permitting Aetna to amend its complaint to incorporate this claim. The jury's finding of permanent disability and the trial court's award for future damages were supported by sufficient evidence.

Affirmed.